USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/21/2022

MORVILLO ABRAMOWITZ GRAND IASON &

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

ralbert@maglaw.com
ddillon@maglaw.com
(212) 856-9600

PAUL R. GRAND

COUNSEL
JASMINE JUTEAU
CURTIS B. LEITNER
JACOB W. MERMELSTEIN
BRENT M. TUNIS

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

January 21, 2022

**BY ECF**
**SUBMITTED UNDER SEAL[1]**

The Honorable Victor Marrero
United States District Judge
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

> The Government is directed to respond, by five days , to the motion set forth herein.
>
> **SO ORDERED.**
>
> 1/21/2022
> DATE                    VICTOR MARRERO, U.S.D.J.

Re: <u>United States v. Manolo Dones, 19 Cr. 169 (VM)</u>

Dear Judge Marrero,

On behalf of our client Manolo Dones, we respectfully submit this letter motion seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

This Court sentenced Mr. Dones on June 5, 2020, to a term of incarceration reflecting a Guidelines sentence of 63 months reduced to account for the 23 months that Mr. Dones had spent in federal custody on a writ of *habeas corpus ad prosequendum* before his sentencing; that is, an additional term of 40 months. *See* Dkt. 196. Mr. Dones pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. *See* Dkt. 115. Mr. Dones has been in federal custody since January 16, 2019, and so—accounting for expected credit for good conduct—he has served approximately two thirds of the 63 months the Court intended him to

---

[1] This letter and its exhibits contain information that falls within the scope of the privacy-related provisions of the SDNY Electronic Case Filing Rules & Instructions ("ECF Rules"), including "sensitive information" as described in ECF Rules 21.3 and 21.4. Accordingly, the original, unredacted versions of this letter and its exhibits are being provided to the Court and the government, and redacted versions will be filed via ECF. We ask that the unredacted versions of this letter and its exhibits be deemed under seal unless and until the Court orders otherwise.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 2

serve. Absent relief from this Court, according to the Bureau of Prisons, Mr. Dones is scheduled for release from incarceration on May 31, 2023.

Extraordinary circumstances justify Mr. Dones's release: first, his need to care for his brother Aramis, who is gravely ill and lacks any other adequate caregiver in Manolo's absence, and second, Mr. Dones's vulnerability to COVID-19 and the unusually difficult conditions of confinement he has faced. Further, a sentencing reduction is appropriate pursuant to the sentencing factors identified in 18 U.S.C. § 3553(a). Even before his arrest in this case, Manolo was on the path to controlling his addiction to heroin, which he began using as a child. He has cemented that resolve and progress over the last few years, staying clean despite the enormous stress of his exceptionally difficult incarceration. That success removes the common factor in his past criminal conduct, reducing substantially the chances he will re-offend.

Finally, if the Court is not inclined to order Mr. Dones's immediate release, a reduction in sentence is appropriate to give full effect to this Court's decision at sentencing to credit Mr. Dones with 23 months the BOP otherwise would not have credited for technical reasons. The BOP has indicated it does not plan to give Mr. Dones credit for good conduct time against this period, effectively lengthening Mr. Dones's sentence by more than three months.

Accordingly, and as set forth in further detail below, we respectfully request an order from this Court granting a reduction in sentence and directing Mr. Dones's release from the custody of the BOP pursuant to 18 U.S.C. § 3582(c)(1)(A).

<u>**Discussion**</u>

Under the First Step Act, a court may reduce a defendant's sentence for any "extraordinary and compelling" reason. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The decision of whether to grant compassionate release pursuant to Section 3582(c)(1)(A)(i) turns upon a court's consideration of whether: (1) the defendant has exhausted his administrative remedies; (2) there are "extraordinary and compelling reasons" for the release; and (3) the relevant sentencing factors under 18 U.S.C. § 3553(a) counsel for or against release. *Id.; United States v. Newkirk*, No. 18 Cr. 699 (CM), 2020 WL 7260739, at *1 (S.D.N.Y. Dec. 10, 2020).

As set forth below, each factor favors a reduction in Mr. Dones's sentence.

**A.      Mr. Dones has exhausted his administrative remedies.**

In assessing the first factor necessary for a successful motion under Section 3582(c)(1)(A)(i), a defendant has met the exhaustion requirement where 30 days have elapsed "from the receipt of [an administrative compassionate release] request by the warden of the defendant's facility. . . ." 18 U.S.C. § 3582(c)(1)(A); *see, e.g., United States v. Pellot,* No. 19 Cr. 169 (VM), 2021 WL 807242, at *1 (S.D.N.Y. Mar. 3, 2021); *Newkirk*, 2020 WL 7260739, at *2.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 3

On June 5, 2021, Mr. Dones filed an administrative request seeking recalculation of his expected good time.  Warden Bergami of FCI Fairton denied that request, which we understand is still pending appeal to BOP headquarters.  *See* Ex. A (Dones Good Time Request) at 2-4.

On August 31, 2021, Mr. Dones filed another administrative relief request with Warden Bergami, seeking compassionate release due to the risk posed to him by COVID-19 and the need to care for his brother Aramis.  *See* Ex. B (Dones Administrative Remedy Request) at 2-3.

In other words, thirty days have elapsed since Mr. Dones submitted each of these requests without a final determination by the BOP on either.  Accordingly, this Court has authority to consider Mr. Dones's motion.  *See Pellot,* 2021 WL 807242, at *1.

**B.    Extraordinary and compelling reasons support release.**

*1)  Aramis Dones's need for a caregiver*

Manolo has also consistently sought to help and care for his younger brother, Aramis Dones.  Aramis has suffered from a series of increasingly severe maladies over the past several years.  As Aramis explained in his letter to this court at sentencing, in the period prior to Manolo's arrest, as Aramis' health worsened, Manolo was one of his primary caretakers. ████

████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████

That need has only increased since Manolo's sentencing.  In short, Aramis's health has deteriorated sharply over the last two years.

████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[2] In conversations with us, Aramis has had difficulty describing the specifics and severity of his ailments, and only through review of his medical records have we come to understand their details and severity.  Due to a miscommunication between counsel and Aramis, █████████
████████████████████████████████████████
████████████████████████████████████ We apologize for the error.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 4



Where the applicant can show he is the only available caregiver for a close family member, multiple courts in this Circuit have found extraordinary circumstances and ordered release. *See United States v. Hasanoff*, No. 10 Cr. 162 (KMW), 2020 WL 6285308, at *3 (S.D.N.Y. Oct. 27, 2020) (granting release where defendant was only person capable of caring effectively for ailing mother); *United States v. Kataev*, No. 16 CR. 763-05 (LGS), 2020 WL 1862685, at *3 (S.D.N.Y. Apr. 14, 2020) (granting reduction in sentence after finding extraordinary circumstances where defendant's wife and elderly parents were not able to care for family member); *United States v. Britton*, No. 17 Cr. 260 (LTS), 2020 WL 4586799, at *1 (S.D.N.Y. Aug. 10, 2020) (granting release to narcotics defendant in part based on need to care for ill spouse); *see also United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (granting

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 5

release to allow defendant to care for ill mother).  This Court should follow suit by recognizing the extraordinary circumstances created by Aramis's deteriorating medical condition and his lack of alternative caregivers.

### 2)  COVID-19 and conditions of confinement

Mr. Dones also may show extraordinary circumstances in the risk posed to him by the ongoing pandemic.  "An inmate (1) in a Bureau of Prisons Facility with a high rate of COVID-19 infections, and (2) who suffers from health conditions found by the Center[s] for Disease Control to place a person at an increased risk of suffering a severe outcome from Covid-19, has met the threshold 'extraordinary and compelling' standard warranting compassionate release." *United States v. Frye*, No. 14 Cr. 810 (CM), 2021 WL 1316497, at *2 (S.D.N.Y. Apr. 8, 2021); *see, e.g., United States v. De La Cruz*, No. 17 Cr. 150 (VAB), 2020 WL 6193891 at *3 (D. Conn. Oct. 22, 2020).

With respect to the first condition, as this Court is aware, federal prisons have been hotbeds for COVID-19 contagion.  More than 50,000 federal inmates—more than a third of the total federal prison population—have tested positive at one point for the virus.  *See COVID-19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus (last visited January 18, 2022). At least 277 have died.  *Id.*  FCI Fairton, where Mr. Dones currently is incarcerated, is no exception: the facility has seen more than 303 positive tests over the course of the pandemic, out of approximately 883 inmates tested overall; a positivity rate of approximately 36 percent.  *Id.* The BOP states that 43 of the staff and inmates at FCI Fairton currently have an "active" case of COVID-19, *id.*, and as Judge McMahon (and others) have noted, "BOP statistical reporting for a particular facility does not always present a clear picture of, or necessarily comport with, the actual infection rate at that facility," *United States v. Goode*, No. 14 Cr. 810 (CM), 2020 WL 4586254 at *5 n.3 (S.D.N.Y. Aug. 10, 2020).  Mr. Dones is in a facility with a high rate of COVID-19 infections, and thus satisfies the first element.

With respect to the second consideration, Mr. Dones has multiple conditions found by the CDC to increase his risk of severe or fatal illness, thereby establishing extraordinary and compelling circumstances:



Morvillo Abramowitz Grand Iason & Anello P.C.

The Hon. Victor Marrero
January 21, 2022
Page 6



In addition, as this Court has recognized, Mr. Dones's age alone makes him particularly vulnerable should he contract the disease.  *See Pellot*, 2021 WL 807242, at *2 (noting 54-year-old defendant's age also contributed to finding of extraordinary and compelling circumstances).[3]

Mr. Dones tested positive for COVID-19 in August 2020, but remained asymptomatic. *See* Ex. E at 2.  Spurred by his concern he might be reinfected, this year, Mr. Dones requested and received the coronavirus vaccine.  *Id*. at 6.  Despite the vaccine, he remains fearful of the potential for infection notwithstanding vaccination and the risk that the Delta and Omicron variants of the coronavirus may be less adequately mitigated by the existing vaccine, with severe or potentially fatal consequences to him.

---

[3] Further, for much of the past 16 months, Mr. Dones has been in varying stages of lockdown; during some periods, he has been let out of his cell only a few times each week.  Such conditions should contribute to a finding of extraordinary and compelling circumstances here, as other courts in this Circuit have found.  *See United States v. Hatcher*, No. 18 Cr. 454 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021); *United States v. Cruz*, No. 18 Cr. 81 (SRU), 2021 WL 1268253, at *6 (D. Conn. Apr. 6, 2021); *see also United States v. Reiter*, No. 87 Cr. 132 (VSB), 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) ("Although [a showing of harsh conditions of confinement] alone is insufficient, it militates in favor of finding 'extraordinary and compelling reasons.'") (citation omitted).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 7

The new Omicron variant has demonstrated particular danger in this regard: in the New York area, for example, breakthrough infections have become commonplace and hospitalizations from such infections have doubled.  *See* Jennifer Millman, *NY COVID Hospitalizations Top 2021 Surge Levels; Omicron Quintuples Risk of Breakthrough Cases*, NBC News, https://www.nbcnewyork.com/news/coronavirus/ny-covid-hospitalizations-top-2021-surge-levels-as-omicron-drives-95-of-cases/3476250/ (January 3, 2022).

Other courts have granted release under these circumstances.  In *United States v. Hatcher*, for example, Judge Failla found extraordinary circumstances and granted release to a vaccinated inmate serving a 52-month sentence on the basis of her medical conditions, her harsh conditions of confinement, and the limitations on mental and physical health care during the pandemic.  2021 WL 1535310, at *3-5.  As in that case, Mr. Dones, while having received the vaccine, has suffered conditions of confinement much more severe than this Court likely anticipated in determining his original sentence.  Release here despite Mr. Dones's vaccination would be consistent with *Hatcher* and a host of other decisions around the country.  *See, e.g., United States v. Mansourov,* 2021 WL 6063235, at *3 (D. Conn. Dec. 22, 2021) (granting release despite vaccination and noting danger posed by new variants); *United States v. Sweet*, No. 07 Cr. 20369, 2021 WL 1430836 (E.D. Mich. Apr. 15, 2021) (granting release despite defendant having received vaccine and recovered from COVID-19, noting breakthrough infections and risk from COVID-19 reinfection); *United States v. Bozon Pappa*, No. 95 Cr. 84, 2021 WL 1439714, at *4 & n.4 (S.D. Fla. Apr. 1, 2021) (granting release even though the defendant had received COVID-19 vaccine); *United States v. Parish*, No. 07 Cr. 578, 2021 WL 1152960, at *3 (D.S.C. Mar. 17, 2021) (granting compassionate release based on COVID-19 risk factors, notwithstanding receipt of first vaccine dose); *United States v. Manglona*, No. 14 Cr. 5393, 2021 WL 808386, at *2 (W.D. Wash. Mar. 3, 2021),(granting reduction in sentence after vaccination); *United States v. Murakami*, No. 17 Cr. 10346, Dkt. 80 (D. Mass. Feb. 25, 2021) (granting release to defendant who had received one dose of the vaccine, and would receive second dose prior to release); *United States v. Bradshaw*, No. 96 Cr. 10032, Dkt. 802 (D. Mass. Mar. 4, 2021) (granting release to vaccinated defendant).[4]

**C.      The relevant 18 U.S.C. § 3553(a) factors warrant reduction of Mr. Dones's sentence.**

In deciding compassionate release motions, courts in this Circuit have assessed the final element for consideration—namely, the Section 3553(a) factors—by particularly emphasizing "the history and characteristics of the defendant, and the need to provide the defendant with

---

[4] Release here would also be consistent with the several decisions in this District reaching similar conclusions as to extraordinary circumstances despite possible immunity conveyed by past infection with COVID-19.  *See, e.g.*, *United States v. Cabrera*, No. 10 Cr. 94 (JSR), 2021 WL 1207382 (S.D.N.Y. Mar. 31, 2021); *United States v. Cameron*, No. 16 Cr. 212 (LAK), 2021 WL 1165133 (S.D.N.Y. Mar. 25, 2021).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 8

needed . . . medical care," *United States v. Brown*, No. 18 Cr. 390 (PAE), 2020 WL 4745098 at
*3 (S.D.N.Y. June 17, 2020). Relevant Section 3553(a) factors in the context of compassionate
release applications also include "the nature and seriousness of the offense, the need for
deterrence, and the need to protect the public." *United States v. Canini*, No. 04 Cr. 283 (PAC),
2020 WL 4742910, at *2 (S.D.N.Y. June 8, 2020). As part of this analysis, a court is also
"obliged to consider" the defendant's demonstrated rehabilitation since sentencing. *United
States v. Corin*, No. 10 Cr. 391, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020). The Section
3553(a) factors favor Mr. Dones's release.

As an initial matter, as discussed above, Mr. Dones suffers from several medical
conditions that, taken either individually or cumulatively, put him at high risk of developing
serious and potentially fatal complications if he is infected with COVID-19.

The pandemic has also caused substantially more difficult and punitive conditions of
confinement for Mr. Dones. As discussed above, courts in this Circuit have granted
compassionate release in part on this basis, and those grants are consistent with Second Circuit
precedent concerning evaluation of harsh conditions of confinement at sentencing. *See Hatcher*,
2021 WL 1535310, at *3; *Cruz*, 2021 WL 1268253, at *6; *see also United States v. Carty*, 264
F.3d 191, 196 (2d Cir. 2001) (permitting downward departure for harsh pre-sentence conditions
of confinement); *United States v. Aracena de Jesus*, No. 20 Cr. 19 (PAE) (S.D.N.Y. July 1,
2020) (imposing a substantial downward variance in part because of "the hard nature of the time
[the defendant] has served . . . during the coronavirus pandemic"); *United States v. Rivera*, No.
16 Cr. 66 (AT) (S.D.N.Y. May 11, 2020) (noting that "being detained at the MCC for three
months in ordinary times is very different from being detained for three months during the
COVID-19 pandemic").

Indeed, the lengthy time under lockdown and the curtailment of programming or
visitation to which Mr. Dones has been subject are closely comparable to solitary confinement.
Such conditions render his sentence substantially more punitive than this Court likely intended.
*Cf.* Craig Haney, *The Psychological Effects of Solitary Confinement: A Systematic Critique*, 47
Crime & Justice 365 (Mar. 2018) ("Studies have identified a wide range of frequently occurring
adverse psychological reactions that commonly affect prisoners in isolation units."). Taken
alongside Mr. Dones's medical risk and family needs, such difficult conditions provide strong
grounds for release.

With respect to the need for the punishment imposed to "reflect the seriousness of the
offense," and to provide "adequate deterrence," 18 U.S.C. § 3553(a)(2)(A), the 42-month period
that Mr. Dones has already been incarcerated is ample to serve these purposes. As discussed in
the PSR, Mr. Dones personally distributed a relatively small quantity of heroin in $10 bags; his
sentence is comparable to or greater than those the court has given his co-defendants, even where
greater amounts were attributed to them. He has also served over two thirds of the sentence this

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 9

Court imposed, and many courts have granted compassionate release to defendants who served even lower percentages of their original sentences.  *See, e.g., Brown*, 2020 WL 4745098 at \*3 (finding that grant of compassionate release to a defendant who served less than half his sentence did not run afoul of Section 3553(a)); *United States v. Park*, 456 F. Supp. 3d at 562 (granting compassionate release after defendant served approximately half her sentence); *United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481 at \*2 (S.D.N.Y. Apr. 20, 2020) (same).

Nor does Mr. Dones pose a substantial risk of danger to the community.  While he acknowledges the criminal record he has accumulated in more than 35 years as an addict—he first used heroin at 12 years old—as we described at sentencing, that record consists almost entirely of non-violent offenses consistent with drug-seeking behavior.

To that point, throughout his adult life, as described at his sentencing, Manolo repeatedly has made efforts to fight his addiction and get clean.  At the age of 50, he has achieved that goal.  When this Court sentenced Manolo, he had been drug-free for over 18 months.  That sobriety continues now, another 18 months later; neither his medical records nor disciplinary history describe any drug-related issues.  Indeed, his records show his efforts to obtain continued treatment for his addiction while incarcerated.  *See* Ex. E at 8.

This success in combatting his addiction removes a key factor in Manolo's past criminal conduct, improving his chances of productive re-entry and reducing his chances of recidivism— and thereby warranting a reduction in his sentence.  *See United States v. Bess*, 455 F. Supp. 3d 53, 65 (W.D.N.Y. 2020) (ordering release of defendant following service of two-thirds of sentence imposed where "extensive criminal history . . . [was] comprised of relatively small burglary and theft-related offenses resulting largely from untreated substance abuse" that the defendant since had overcome); *United States v. Handy*, 2020 WL 2487371, at \*1 (D. Conn. May 14, 2020) (granting release to defendant with criminal history that had "primarily been a result of his own struggles with substance abuse," since treated); *United States v. Bolanos*, No. 17 Cr. 339 (AJN), 2020 WL 7647458, at \*3 (S.D.N.Y. Sept. 17, 2020) (same).

Mr. Dones's age also independently reduces his chances of recidivism.  Research by the United States Sentencing Commission suggests that in particular persons over 50 are substantially less likely to recidivate than younger cohorts, and that chance decreases over time. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 7, 2017) at 28-29; *see also United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017) (finding that district court erred in not considering "widely available, definitive research demonstrating that recidivism substantially decreases with age" in determining sentence).

Finally, as described in detail above, Manolo's brother Aramis is gravely ill.  While he was already sick when Manolo was incarcerated, his health has suffered substantially since then.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 10

████████████████████████████████████████████████
██████████████████████████████████████

Manolo is the only person in a position to provide the care Aramis needs.  Aramis's mother, Manolo's aunt, is elderly and physically unable to manage the demanding tasks required to adequately manage Aramis's day-to-day needs, let alone attend to his long-term health.  Aramis's sister lives in Rockland County, and, due to her work schedule and other commitments, she is not available to contribute materially to his care.  If released, Mr. Dones intends to return to the Bronx, where he has lived most of his life, so that he can be with his brother and help take care of his daily needs.  ████████████████████  Manolo's status as the sole available caregiver strongly favors his release.  *See Hasanoff*, 2020 WL 6285308, at *3; *Kataev*, 2020 WL 1862685, at *3.

**D.    In the alternative, the Court should reduce Mr. Dones's sentence to give full effect to the Court's intended sentence.**

In sentencing Mr. Dones, this Court took account of the fact that Mr. Dones was unlikely to receive credit against his federal sentence for his time in custody prior to his sentencing, because he remained in state primary custody throughout that period, and was subject to pending state charges for the same conduct.  The Court found "that a sentence of 63 months' imprisonment is reasonable and appropriate," then "crediting Mr. Dones' sentence [of] 63 months by the 23 months he has already served on related charges in the state system."  Sentencing Tr. at 24.

The judgment in this case likewise states that Mr. Dones was sentenced to "40 months (this sentence consists of a 63-month sentence reduced by 23 months, pursuant to the Court's authority, to account for the defendant's incarceration from (i) May 29, 2018 to August 30, 2018, and (ii) September 13, 2018 to June 5, 2020)."  Dkt. 196.  The Court also ordered that Mr. Dones's sentence run concurrently with any sentence he might receive in the related state proceedings against him.  *Id*.

Mr. Dones subsequently was transferred back to state custody to face the state charges against him, but those charges thereafter were dismissed.  State authorities then returned Mr. Dones to federal custody to serve out the remainder of his federal sentence.

As the Court has seen in our prior letters and those submitted by Mr. Dones, however, Mr. Dones's expected date of release—currently May 31, 2023—incorporates only expected credit for good conduct time against the 40-month post-sentencing remainder of his sentence (indeed, less, at just approximately 127 days), rather than against the 63-month sentence he will serve (which would ordinarily be approximately 283 days).  In other words, by not accounting for good conduct time credit against Mr. Dones's full sentence, BOP's calculation will require

Morvillo Abramowitz Grand Iason & Anello P.C.

The Hon. Victor Marrero
January 21, 2022
Page 11

Mr. Dones to serve more than three months beyond what a similarly situated defendant given a 63-month sentence would serve.

Mr. Dones is entitled to good time credit against this time for two reasons. First, credit is consistent with the court's intention that Mr. Dones serve a 63-month sentence. Second, credit is consistent with the BOP's and Second Circuit's interpretation of the applicable statutes.[5]

*1. Credit is required to give full effect to the Court's intended sentence.*

At sentencing, as noted, this Court found "that a sentence of 63 months' imprisonment is reasonable and appropriate," and then "credit[ed] Mr. Dones' sentence [of] 63 months by the 23 months he has already served on related charges in the state system." Sentencing Tr. at 24. The judgment in this case likewise states that Mr. Dones was sentenced to "40 months (this sentence consists of a 63-month sentence reduced by 23 months, pursuant to the Court's authority, to account for the defendant's incarceration from (i) May 29, 2018 to August 30, 2018, and (ii) September 13, 2018 to June 5, 2020)." Dkt. 196.

To reiterate, Mr. Dones's expected date of release, however—May 31, 2023—incorporates only expected credit for good conduct time against the 40-month post-sentencing remainder of his sentence, rather than against the 63 months of incarceration he will serve (which ordinarily would result in good time credit of approximately 283 days). This calculation does not correspond to what this Court likely intended. On this basis, a reduction in sentence in at least the amount Mr. Dones ordinarily would receive in his good time credit against the time served before his sentencing—approximately 105 days, or 15 percent of 23 months—is appropriate.

---

[5] Granting a reduction in sentence on this basis is well within the Court's power under 18 U.S.C. § 3582(c)(1)(A), despite the government's assertion in its letter of August 23, 2021 that the only remedy available to Mr. Dones is a habeas petition. *See* Dkt. 258. The cases cited by the government for this proposition all predate the First Step Act of 2018, which permitted defendants to petition the court directly for compassionate release. As confirmed by the Second Circuit in *Brooker,* this Court has broad discretion to consider available rationales available for a reduction in sentence. *See Pellot*, 2021 WL 807242, at *1. Here, among other reasons, failure to account for good time credit results in an "unwarranted sentencing disparity" between Mr. Dones and all similarly situated defendants, both creating an independent "extraordinary and compelling circumstance" and justifying a reduction under Section 3553(a). *See, e.g.*, *Cabrera,* 2021 WL 1207382 at *6.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Victor Marrero
January 21, 2022
Page 12

    *2.   The applicable statutes and Second Circuit case law also support credit.*

    18 U.S.C. § 3585 specifies that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed[] that has not been credited against another sentence."

    With respect to good conduct time against a prisoner's sentence, 18 U.S.C. § 3624(b) states that a prisoner "may receive credit toward the service of the prisoner's sentence . . . of up to 54 days for each year of the prisoner's sentence imposed by the court."

    In *Lopez v. Terrell*, 654 F.3d 176 (2d Cir. 2011), the Second Circuit held—consistent with BOP policy and the BOP's position in that case—that with respect to good conduct time based on pre-sentencing detention, these two statutory sections worked in tandem: in other words, that a defendant is eligible for good conduct time for "the period of incarceration following the date of sentencing, as well as for any presentence custody credited to that period under § 3585(b)." *Id*. at 171, 183.

    The government's assertion in its August 23, 2021 letter (Dkt. 258) that *Lopez* forecloses relief is incorrect.  In *Lopez*, the court found that where a district court adjusts a defendant's sentence pursuant to U.S.S.G. § 5G1.3(b) to account for a state term of imprisonment imposed for the same or relevant conduct, the defendant is not entitled to credit for good conduct time against that state time, but that part of the court's holding does not apply here.

    The reason is simple: U.S.S.G. § 5G1.3(b) applies only to situations in which the defendant has already been sentenced to a "term of imprisonment" on charges for the same or related conduct, and Mr. Dones was never convicted or sentenced to a "term of imprisonment" on the state charges against him.  Those charges were dismissed.

    In other words, the government's letter misunderstands the bases for Mr. Dones's petition.  As set forth in the PSR, the conduct (sale of narcotics) encompassed by the state charges on which Mr. Dones was held in state custody prior to execution of the writ were incorporated into the federal charges (conspiracy to sell narcotics) to which he pleaded guilty and on which he was sentenced.  PSR ¶¶ 104-05.  Because those state charges later were dismissed, Mr. Dones's time in federal custody is also time that has "not been credited against another sentence." 18 U.S.C. § 3585(b).  Under *Lopez*, then, because Mr. Dones's time in custody before this Court sentenced him must be credited against his sentence pursuant to Section 3585(b), it also must be incorporated into the calculation of his good conduct credit under Section 3624.[6]

---

[6] The First Step Act's alteration of Section 3624, after *Lopez* was decided, to read "each year of

Morvillo Abramowitz Grand Iason & Anello P.C.

The Hon. Victor Marrero
January 21, 2022
Page 13

By not accounting for good conduct time credit against Mr. Dones's full sentence, the BOP's calculation will force Mr. Dones to serve more than what the statutory scheme, as interpreted by *Lopez*, requires.

  In short, both the Court's sentence and the applicable statutes require that Mr. Dones receive credit for good conduct time in the prorated amount of 54 days for each year of his 63-month sentence, assuming that he satisfies the relevant other criteria. *See* 18 U.S.C. §§ 3624(b); 3585(b); *Lopez*, 654 F.3d at 183; Sentencing Tr. at 24.

*   *   *

  For these reasons, we respectfully request that the Court grant Mr. Dones's request for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, or in the alternative reduce his sentence as the Court deems appropriate.

Respectfully submitted,

*s/ Richard F. Albert*
Richard F. Albert
A. Dennis Dillon

*Counsel to Manolo Dones*

cc:  Counsel of Record (by ECF)

---

the prisoner's sentence imposed by the court," rather than "each year of the prisoner's term of imprisonment," does not affect the calculation of Mr. Dones's time, because the sentence imposed by the Court here was 63 months, and again, the subsequent dismissal of the state charges against Mr. Dones independently entitles him to the same credit for time served that the Court prospectively awarded him in imposing its sentence.